UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-CV-61841-COHN/SELTZER

STAR-BRITE DISTRIBUTING, INC.,

Plaintiff/Counterclaim Defendant,

v.

GOLD EAGLE CO.,

Defendant/Counterclaimant.

**ANSWER TO COMPLAINT AND
COUNTERCLAIM**

Defendant and Counterclaimant Gold Eagle Co. ("Gold Eagle", "Defendant" or "Counterclaim Plaintiff"), for its Answer and Counterclaim to Plaintiff Star-Brite Distributing, Inc.'s Complaint (the "Complaint"), states as follows:

**NATURE OF THIS ACTION**

1.      Paragraph 1 of the Complaint states legal conclusions to which no response is required.  To the extent that a response is required, Defendant denies the allegations contained in paragraph 1 of the Complaint.

2.      Paragraph 2 of the Complaint states legal conclusions to which no response is required.  To the extent that a response is required, Defendant denies the allegations contained in paragraph 2 of the Complaint.

3.      Paragraph 3 of the Complaint states legal conclusions to which no response is required.  To the extent that a response is required, Defendant denies the allegations contained in paragraph 3 of the Complaint.

4.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 4 of the Complaint, and on that basis denies each and every allegation.

5.      Defendant admits the allegations in paragraph 5 of the Complaint.

6.      Paragraph 6 of the Complaint states legal conclusions to which no response is required.

7.      Paragraph 7 of the Complaint states legal conclusions to which no response is required.  To the extent that a response is required, Defendant denies the allegations contained in paragraph 7 of the Complaint.

8.      Paragraph 8 of the Complaint states legal conclusions to which no response is required.

9.      Paragraph 9 of the Complaint states legal conclusions to which no response is required.

10.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 of the Complaint, and on that basis denies each and every allegation.

11.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first and last sentences of paragraph 11 of the Complaint, and on that basis denies each and every allegation.  Defendant denies the remaining allegations in paragraph 11 of the Complaint.

12.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 of the Complaint, and on that basis denies each and every allegation.

13.     Defendant admits the allegations in paragraph 13 of the Complaint.

14.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14 of the Complaint.  To the extent a response is required, Defendant respectfully refers the court to the document referenced in paragraph 14 for its contents.

15.     Defendant denies the allegations contained in paragraph 15 of the Complaint, except admits that it became aware of the fact that there was a court ruling in the *Kop-Coat* case sometime after it was entered.

16.     Defendant Gold Eagle admits that in or about April 2014 it started utilizing marketing materials that contained results of tests conducted by an independent OEM[1] industry and government recognized testing laboratory that compared various fuel treatment products, and otherwise denies each and every other allegation in paragraph 16 of the Complaint.

17.     Defendant denies the allegations contained in paragraph 17 of the Complaint.

18.     Defendant denies the allegations in paragraph 18 of the Complaint except admits that Gold Eagle in or about April 2014 placed in limited test markets product information hang tags on the "necks" of STA-BIL® product bottles that were on retail store shelves that contained the words "enzyme free" and "no enzyme."   Defendant respectfully refers the court to the product information hang tag referenced in paragraph 18 of the Complaint for its contents (the "Product Information Hang Tag(s)").

19.     Defendant Gold Eagle admits that in or about April 2014 it placed in limited test markets Product Information Hang Tags attached to the "necks" of the STA-BIL® product bottles that were on retail store shelves, and otherwise denies the remaining allegations contained

---

[1]     OEM Stands for Original Equipment Manufacturer and refers to the manufacturers of engines for cars, boats, lawnmowers and other equipment.

in paragraph 19.  In addition, Defendant respectfully refers the court to the document referenced in paragraph 19 and attached as Exhibit B to the Complaint for its contents.

20.     Defendant admits that the Product Information Hang Tag referenced in paragraph 20 of the Complaint contains the results of two tests performed by an independent OEM industry and government recognized testing laboratory facility on STA-BIL®, Star Tron® and other fuel treatment products.  Defendant otherwise denies the remaining allegations contained in paragraph 20 of the Complaint and respectfully refers the court to the document referenced in paragraph 20 and attached as Exhibit B to the Complaint for its contents.

21.     Defendant denies the allegations in paragraph 21 of the Complaint.

22.     Defendant admits that there is an image of the cover page of the Product Information Tag contained in paragraph 22 of the Complaint and respectfully refers the court to the document referenced in paragraph 22 and attached as Exhibits B to the Complaint for its contents.  Defendant otherwise denies the allegations contained in paragraph 22 of the Complaint.

23.     Defendant admits that the next page after the title page of the Product Information Tag is contained in paragraph 23 of the Complaint and is titled "Why are STA-BIL® Brand Products Enzyme Free" and Defendant respectfully refers the court to the document referenced in paragraph 23 for its contents.

24.     Defendant denies the allegations in paragraph 24 of the Complaint and respectfully refers the court to the document referenced in paragraph 24 and attached as Exhibit B to the Complaint for its contents.

25.     Defendant admits the Product Information Tag contains the charts comparing STA-BIL® to several of its competitors including Star Tron® based on results of a gasoline

stability test and a corrosion protection test performed by an independent OEM industry and government recognized testing laboratory facility.  Defendant further admits that a similar product information tag that is referenced in footnote 1 to paragraph 25 of the Complaint is attached as Exhibit C to the Complaint and contains the same charts comparing STA-BIL® to several of its competitors including Star Tron® based on results of a gasoline stability test and a corrosion protection test performed by an independent OEM industry and government recognized testing laboratory facility.  Defendant otherwise denies the allegations contained in paragraph 25 of the Complaint and footnote 1 to paragraph 25 of the Complaint and respectfully refers the court to the documents referenced in paragraph 25 and attached as Exhibits B and C of the Complaint for their contents.

26.     Defendant denies the allegations contained in paragraph 26 of the Complaint.  In addition, Defendant respectfully refers the court to the documents referenced in paragraph 26 and attached as Exhibits B and C of the Complaint for their contents.

27.     Defendant denies the allegations contained in paragraph 27 of the Complaint.  In addition, Defendant respectfully refers the court to the documents referenced in paragraph 27 and attached as Exhibits B and C of the Complaint for their contents.

28.     Defendant admits the allegations in paragraph 28 of the Complaint and respectfully refers the court to the documents referenced in paragraph 28 and attached as Exhibits B and C of the Complaint for their contents.

29.     Defendant admits the allegations in paragraph 29 of the Complaint and respectfully refers the court to the documents referenced in paragraph 29 and attached as Exhibits B and C of the Complaint for their contents.

30.     Defendant denies the allegations contained in paragraph 30 of the Complaint and respectfully refers the court to the documents referenced in paragraph 30 and attached as Exhibits B and C of the Complaint for their contents.

31.     Defendant admits the allegations in paragraph 31 of the Complaint and respectfully refers the court to the documents referenced in paragraph 31 and attached as Exhibits B and C of the Complaint for their contents.

32.     Defendant admits that the results of a corrosion protection test performed by an independent OEM industry and government recognized testing laboratory facility which placed steel rods in water/E10 blended gasoline for 4 hours are shown on a chart contained in the Product Information Tags that are attached as Exhibits B and C of the Complaint.  Defendant otherwise denies the allegations in paragraph 32 of the Complaint and footnote 2 thereof and respectfully refers the court to the documents referenced in paragraph 32 and attached as Exhibits B and C of the Complaint for their contents.

33.     Defendant admits that measuring fuel stability in E10 blended gasoline can inform consumers as to the expected time that E10 blended gasoline can remain in fuel tanks of engines for various equipment before the gasoline starts to form into a gummy sludge like material that can effect an engine's performance, that Gold Eagle hired an independent OEM industry and government recognized testing laboratory facility to compare how different fuel treatment products performed with respect to fuel stability, that the independent industry and government recognized testing laboratory facility ran fuel stability tests on several fuel treatment products including STA-BIL® products and Star Tron® using E10 fuel, that the OEM industry and government recognized independent testing laboratory facility hired by Gold Eagle used a standard referred to as ASTM D525 which is a standard recognized by many OEMs as a reliable

test for measuring the effects on fuel stability caused by fuel treatment additives on E10 blended gasoline, and that the ASTM D525 standard provides that the fuel tested be heated to a temperature between about 208° to 215° F to simulate the aging process of fuel when stored in a tank over an accelerated period of time.  Defendant further avers that there is no OEM industry accepted test for determining the effects of enzymes in fuel treatment additive products, that Star-Brite itself, in promoting its Star Tron® product, relies on a test that applied the ISO EN 14112 standard, a European standard that was designed for biodiesel fuels, not E10, and a test that applied the ASTM D4625 standard, a standard that was designed for diesel fuels, not E10. Defendant otherwise denies the allegations contained in paragraph 33 of the Complaint.[2]

34.     Defendant admits that the ASTM D525 standard was originally approved in 1939, that the current edition of ASTM D525 was approved and published in 2012, and that ASTM D525 Note 2 states that "the precision data were developed with gasoline derived from hydrocarbon sources only without oxygenates."  Defendant further avers that the OEM industry and the OEM industry and government recognized testing laboratory facility used by Gold Eagle recognize the ASTM D525 standard as being applicable to E10 fuel.  Defendant further avers that Star-Brite itself, in promoting its Star Tron® product, relies on a test that applied the ISO EN 14112 standard, a European standard that was designed for biodiesel fuels, not E10, and a test that applied the ASTM D4625 standard, a standard that was designed for diesel fuels, not E10.   Defendant otherwise denies the allegations in paragraph 34 of the Complaint and respectfully refers the court to the ASTM D525 standard referenced in paragraph 34 for its contents.

---

[2]     The various headings that appear throughout the Complaint require no answer.  To the extent said headings require an answer, Defendant denies any allegations contained therein.

35.     Defendant admits that the quoted language in paragraph 35 appears in the ASTM D525 standard but denies that this language is quoted in context or in its entirety.  Defendant otherwise denies the allegations in paragraph 35 of the Complaint and respectfully refers the court to the ASTM D525 standard referenced in paragraph 35 for its contents.

36.     Paragraph 36 of the Complaint states legal conclusions to which no response is required.  To the extent that a response is required, Defendant denies the allegations contained in paragraph 36 of the Complaint.

37.     Defendant admits that corrosion control is an important feature of fuel treatment products for ethanol based gasoline as ethanol attracts water and water can cause corrosion damage to fuel tanks, fuel lines, carburetors and injectors and other engine parts.  Defendant otherwise denies the allegations in paragraph 37 of the Complaint.

38.     Defendant denies the allegations in Paragraph 38 of the Complaint except admits that the Product Information Hang Tags refer to a test conducted by the OEM industry and government recognized testing laboratory facility hired by Gold Eagle which applied the NACE Test TM 0172 (the "NACE Test") to compare a number of fuel treatment products including STA-BIL® and Star Tron®.

39.     Defendant denies the allegations contained in paragraph 39 of the Complaint, except admits that the NACE Test was originally created to test the corrosive properties of petroleum product pipeline cargoes.  Defendant further avers that the OEM industry and the marine boat engine manufacturing industry recognize the NACE test as the standard test for measuring ferrous metal corrosion, and that most marine boat engine fuel systems contain ferrous metal components that are exposed to both gasoline and E10.  Defendant respectfully refers the court to the NACE test referenced in paragraph 39 for its contents.

40.     Defendant admits that fuel sent through pipelines from refineries does not contain ethanol and that E10 fuel is created after fuel is sent through refinery pipelines, that Star Tron® and STA-BIL® are designed to treat E10 fuel and that the language quoted in paragraph 40 of the Complaint appears in the NACE Test.  Defendant further avers that the OEM industry and the marine boat engine manufacturing industry recognize the NACE test as the standard test for measuring ferrous metal corrosion, and that most marine boat engine fuel systems contain ferrous metal components that are exposed to both gasoline and E10.  Defendant otherwise denies the allegations in paragraph 40 of the Complaint or that the NACE Test is quoted in context or in its entirety.  Defendant respectfully refers the court to the NACE test referenced in paragraph 40 for its contents.

41.     Defendant denies the allegations contained in paragraph 41 of the Complaint and respectfully refers the court to the documents referenced in paragraph 41 and attached as Exhibits B and C to the Complaint for their contents.

42.     Paragraph 42 of the Complaint states legal conclusions to which no response is required.  To the extent that a response is required, Defendant denies the allegations contained in paragraph 42 of the Complaint and respectfully refers the court to the documents referenced in paragraph 42 and attached as Exhibits B and C to the Complaint for their contents.

43.     Paragraph 43 of the Complaint states legal conclusions to which no response is required.  To the extent that a response is required, Defendant denies the allegations contained in paragraph 43 of the Complaint.  In addition, Defendant respectfully refers the court to the documents referenced in paragraph 43 and attached as Exhibits B and C to the Complaint for their contents.

44.     Paragraph 44 of the Complaint states legal conclusions to which no response is required.  To the extent that a response is required, Defendant denies the allegations contained in paragraph 44 of the Complaint and respectfully refers the court to the documents referenced in paragraph 44 and attached as Exhibits B and C to the Complaint for their contents.

45.     Paragraph 45 of the Complaint states legal conclusions to which no response is required.  To the extent that a response is required, Defendant denies the allegations contained in paragraph 45 of the Complaint and respectfully refers the court to the documents referenced in paragraph 45 and attached as Exhibits B and C to the Complaint for their contents.

46.     Paragraph 46 of the Complaint states legal conclusions to which no response is required.  To the extent that a response is required, Defendant denies the allegations contained in paragraph 46 of the Complaint.

47.     Paragraph 47 of the Complaint states legal conclusions to which no response is required.  To the extent that a response is required, Defendant denies the allegations contained in paragraph 47 of the Complaint.

48.     Paragraph 48 of the Complaint states legal conclusions to which no response is required.  To the extent that a response is required, Defendant denies the allegations contained in paragraph 48 of the Complaint.

49.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 49 of the Complaint, and on that basis denies each and every allegation.

## <u>COUNT I</u>

50.     This allegation does not require a response as it merely incorporates by reference the allegations of paragraphs 1 through 49.  Therefore, Defendant repeats and realleges the

answers above to the allegations set forth in paragraphs 1 through 49 of the Complaint as if each were fully set forth herein.

51.     Defendant denies the allegations contained in paragraph 51 of the Complaint.

52.     Defendant denies the allegations contained in paragraph 52 of the Complaint.

53.     Defendant denies the allegations contained in paragraph 53 of the Complaint.

54.     Defendant denies the allegations contained in paragraph 54 of the Complaint.

Defendant denies that Plaintiff is entitled to any of the forms of relief identified in the WHEREFORE paragraph following paragraph 54 of the Complaint.

## COUNT II

55.     This allegation does not require a response as it merely incorporates by reference the allegations of paragraphs 1 through 49.   Therefore, Defendant repeats and realleges the answers above to the allegations set forth in paragraphs 1 through 49 of the Complaint as if each were fully set forth herein.

56.     Paragraph 56 of the Complaint states legal conclusions to which no response is required.  To the extent that a response is required, Defendant denies the allegations contained in paragraph 56 of the Complaint.

57.     Defendant denies the allegations contained in paragraph 57 of the Complaint.

58.     Defendant denies the allegations contained in paragraph 58 of the Complaint.

59.     Defendant denies the allegations contained in paragraph 59 of the Complaint.

60.     Defendant denies the allegations contained in paragraph 60 of the Complaint.

Defendant denies that Plaintiff is entitled to any of the forms of relief identified in the WHEREFORE paragraph following paragraph 60 of the Complaint.

## COUNT III

61.      This allegation does not require a response as it merely incorporates by reference the allegations of paragraphs 1 through 49.   Therefore, Defendant repeats and realleges the answers above to the allegations set forth in paragraphs 1 through 49 of the Complaint as if each were fully set forth herein.

62.      Paragraph 62 of the Complaint states legal conclusions to which no response is required.

63.      Paragraph 63 of the Complaint states legal conclusions to which no response is required.

64.      Paragraph 64 of the Complaint states legal conclusions to which no response is required.

65.      Defendant admits that Gold Eagle and Star-Brite are competitors and otherwise denies the allegations contained in paragraph 65 of the Complaint.

66.      Defendant admits that the Product Information Tags are in printed form and were placed by a third-party vendor in limited test markets on the "necks" of STA-BIL® product bottles that were on retail store shelves.   Defendant otherwise denies the allegations in paragraph 66 of the Complaint.

67.      Defendant admits the allegations contained in paragraph 67 of the Complaint to the extent that they refer to the Production Information Tags and their contents.   Defendant otherwise denies the allegations in paragraph 67 of the Complaint.

68.      Defendant denies the allegations contained in paragraph 68 of the Complaint.

69.      Defendant denies the allegations contained in paragraph 69 of the Complaint.

70.     Defendant admits that the Product Information Tags were placed by a third-party vendor, at Gold Eagle's direction, in limited test markets on the "necks" of STA-BIL® product bottles that were on retail store shelves, and that one of the purposes of the Product Information Tags and their contents was to market and sell STA-BIL® and to induce consumers to purchase STA-BIL® over its competitors, including Star Tron®.   Defendant otherwise denies the allegations contained in paragraph 70 of the Complaint.

71.     Defendant denies the allegations contained in paragraph 71 of the Complaint.

72.     Defendant denies the allegations contained in paragraph 72 of the Complaint.

73.     Defendant denies the allegations contained in paragraph 73 of the Complaint.

74.     Defendant denies the allegations contained in paragraph 74 of the Complaint.

Defendant denies that Plaintiff is entitled to any of the forms of relief identified in the WHEREFORE paragraph following paragraph 74 of the Complaint.

## COUNT IV

75.     This allegation does not require a response as it merely incorporates by reference the allegations of paragraphs 1 through 49.   Therefore, Defendant repeats and realleges the answers above to the allegations set forth in paragraphs 1 through 49 of the Complaint as if each were fully set forth herein.

76.     Defendant denies the allegations contained in paragraph 76 of the Complaint.

77.     Defendant denies the allegations contained in paragraph 77 of the Complaint.

78.     Defendant denies the allegations contained in paragraph 78 of the Complaint.

79.     Defendant denies the allegations contained in paragraph 79 of the Complaint.

Defendant denies that Plaintiff is entitled to any of the forms of relief identified in the WHEREFORE paragraph following paragraph 79 of the Complaint.

## DEFENSES

As further, separate defenses and affirmative defenses, without assuming the burden of proof of any such defense that rests with Plaintiff, Defendant states as follows:

### FIRST DEFENSE

The Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

Plaintiff's claims are barred because Plaintiff has suffered no legally cognizable damages as a result of any of the allegations against Defendant.

### THIRD DEFENSE

Plaintiff's claims fail because nothing stated in the subject Product Information Tags and/or advertising is explicitly or implicitly materially false or misleading.

### FOURTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because all or part of the damages sought are speculative and/or remote.

### FIFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches, waiver and/or estoppel.

### SIXTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands as more fully set forth in Defendant's Counterclaim.

## SEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to take reasonable steps to mitigate its alleged damages, if any, and its recovery must be barred or diminished accordingly.

## EIGHTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because the tests relied upon by Defendant that are referred to in the subject Product Information Tags and/or advertising were based upon reliable and established standards recognized by the applicable industries for which STA-BIL® is sold and established the propositions for which they were cited.

## NINTH DEFENSE

Plaintiff's claims for false advertising under the Lanham Act are barred, in whole or in part, because the subject Product Information Tags and/or advertising did not deceive, or have the tendency to deceive consumers.

## TENTH DEFENSE

Plaintiff's claims for false advertising are barred, in whole or in part, because any alleged deception caused by the subject Product Information Tags and/or advertising, which Defendant strictly denies, did not have a material effect on consumers' purchasing decisions.

## ELEVENTH DEFENSE

Plaintiff's claims for false advertising are barred, in whole or in part, because Plaintiff has not and is not likely to suffer any injuries as a result of the subject Product Information Tags and/or advertising.

## TWELFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Defendant acted in good faith in preparing and disseminating the subject Product Information Tags and/or advertising and it did not willfully or intentionally disseminate any false or misleading claims or statements.

## THIRTEENTH DEFENSE

Plaintiff's claims for injunctive relief are barred, in whole or in part, because Plaintiff has not and will not suffer irreparable harm in the absence of an injunction.

## FOURTEENTH DEFENSE

Plaintiff's claims for injunctive relief are barred, in whole or in part, as moot as Defendant has no plans to further disseminate the subject Product Information Tags and/or advertising and has communicated this to Plaintiff pending resolution of this case.

## FIFTEENTH DEFENSE

Plaintiff's claims for injunctive relief are barred, in whole or in part, because Plaintiff has an adequate remedy at law.

## SIXTEENTH DEFENSE

Plaintiff's claims under Florida's Statutory False Advertising Statute are barred, in whole or in part, because Plaintiff is unable to establish that Defendant made a misrepresentation of fact.

## SEVENTEENTH DEFENSE

Plaintiff's claims under Florida's Statutory False Advertising Statute are barred, in whole or in part, because Plaintiff is unable to establish that it and/or any consumers relied upon the subject Product Information Tags and/or advertising.

## EIGHTEENTH DEFENSE

Plaintiff's claims for common law unfair competition are barred, in whole or in part, because Plaintiff is unable to establish that the subject Product Information Tags and/or advertising constituted deceptive and/or fraudulent conduct on the part of Defendant.

## NINETEENTH DEFENSE

Plaintiff's claims for common law unfair competition are barred, in whole or in part, because Plaintiff is unable to establish that the subject Product Information Tags and/or advertising resulted in consumer confusion or a likelihood of consumer confusion.

## TWENTIETH DEFENSE

Plaintiff's claims for Deceptive and Unfair Trade Practices are barred, in whole or in part, because Plaintiff is unable to establish that the subject Product Information Tags and/or advertising constituted a deceptive or unfair practice.

## TWENTY-FIRST DEFENSE

Plaintiff's claims for Deceptive and Unfair Trade Practices are barred, in whole or in part, because Plaintiff is unable to establish that the subject Product Information Tags and/or advertising are likely to mislead consumers.

## TWENTY-SECOND DEFENSE

Plaintiff's claims for Deceptive and Unfair Trade Practices are barred, in whole or in part, because Plaintiff is unable to establish that the subject Product Information Tags and/or advertising offend established public policy and are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers.

## TWENTY-THIRD DEFENSE

Plaintiff's claims for punitive damages are barred, in whole or in part, because Plaintiff is unable to establish that Defendant engaged in intentional misconduct or gross negligence.

## TWENTY-FOURTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff did not suffer any damages as a direct and proximate result of the subject Product Information Tags and/or advertising.

## TWENTY-FIFTH DEFENSE

As its twenty-fifth defense, Defendant states that it is entitled to a set-off for any damages found to be sustained as a result of to the Plaintiff's actions as set forth in Defendant's Counterclaim.

## TWENTY-SIXTH DEFENSE

Defendant hereby gives notice that it intends to rely upon any other defense that is now or may become available or appear during, or as a result of the discovery proceedings in, this action and hereby reserves its rights to amend its Answer to assert any such defense.

WHEREFORE, Defendant/Counterclaim Plaintiff Gold Eagle respectfully requests judgment against Plaintiff/Counterclaim Defendant Star-Brite on the Complaint as follows:

(A) Dismissing Star-Brite's Complaint with prejudice in its entirety;

(B) Awarding Gold Eagle its costs, disbursements, interest and expenses incurred in this action, including reasonable attorneys' fees; and

(C) Granting Gold Eagle such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Defendant hereby demands a trial by jury on all issues so triable in the Complaint.

## COUNTERCLAIMS

Defendant and Counterclaim Plaintiff Gold Eagle, by and through its undersigned counsel, brings this Counterclaim against Plaintiff and Counterclaim Defendant Star-Brite, and alleges as follows:

## NATURE OF COUNTERCLAIM

1.      This Counterclaim is an action for damages and injunctive relief pursuant to federal and state law based upon false and misleading statements made by Star-Brite in various advertising and marketing materials concerning its Star Tron® Enzyme fuel treatment product, a fuel treatment product which Star-Brite markets for use in various engines, including cars, snowmobiles, boats, recreation vehicles, lawn mowers and generators.  As discussed more fully herein, Star-Brite makes sweeping and wholly unsupported claims about the ability of its Star Tron® Enzyme Fuel Treatment to, among other things, enhance engine performance and fuel economy, prevent the formation of gum and other solids in E10 fuel for up to 2 years, stabilize E10 fuel for up to 2 years and generally prevent ethanol fuel problems.  None of these claims are supported by any disclosed testing that is recognized as applicable to E10 fuel treatment products by the OEM industry.  Moreover, when tested in accordance with OEM industry recognized standards, Star-Brite's Star Tron® Enzyme fuel treatment product shows no indication that it does in fact perform as claimed by Star-Brite.  In what can only be characterized as a pre-emptive strike to attempt to deflect attention away from the lack of any reliable support for many of the claims it is making about Star Tron®, in its Complaint in this action, Star-Brite accuses

Gold Eagle of applying standards in the testing of its STA-BIL® products that were not designed for E10 fuel.  Yet, Star-Brite relies on standards based on Biodiesel fuels and distillate fuels to support some of the comparative claims it makes concerning Star Tron®.  Star-Brite cannot have it both ways, and many of the claims it is making concerning its Star Tron® fuel treatment product are clearly false and misleading and are causing harm to Gold Eagle, which is a direct competitor to Star Tron®.

## JURISDICTION AND VENUE

2.      This Court has federal question jurisdiction over Counterclaim Plaintiff's Lanham Act claims because they arise under federal statute, 15 U.S.C. § 1125(a).

3.      This Court also has diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of attorney's fees and costs.

4.      This Court has supplement jurisdiction overt Counterclaim Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because the state law claims are so related to the federal claim that they form a part of the same case or controversy and derive from a common nucleus of facts.

5.      Gold Eagle is a company in the business of, among other things, providing fuel treatment additive products designed to protect, preserve and improve the efficiency and performance of cars, boats, recreation vehicles and other fuel operated machinery.

## PARTIES

6.      Counterclaimant Gold Eagle is incorporated under the laws of the State of Illinois and has its principal place of business at 4400 S. Kildare Avenue, Chicago, Illinois 60632.

7.     Counterclaim Defendant Star-Brite is incorporated under the laws of the state of Florida and has its principal place of business at 4041 SW 47th Avenue, Fort Lauderdale, Florida 33314.   Star-Brite describes itself as the marine industry's leading manufacture of waxes, polishes, teak finishes, motor oils, fuel additives and more.

## ALLEGATIONS COMMON TO ALL COUNTERCLAIMS

8.     Gold Eagle began with a small Chicago storefront, and a vision to produce only the most innovative automotive chemicals.   In 1932, the business focused on preventing and curing the toughest engine problems.   Since then, Gold Eagle has evolved beyond the automotive market to provide numerous products that protect cars, boats, recreation equipment, patio furniture and more.

9.     The Gold Eagle family of products includes the popular STA-BIL® line of fuel stabilizers.   STA-BIL® branded products are fuel treatment additives that can be used in many types of vehicles and equipment, including a range of products designed to treat all engines from everyday driving vehicles to collector cars, to snow-mobiles to boats.   STA-BIL® products include:

- STA-BIL Storage, which helps to keep gasoline fresh.

- STA-BIL Protection, which helps prevent corrosion, helps remove water, and cleans fuel injectors and carburetors for improved year-round performance.

- STA-BIL Marine, which was specially formulated for use in harsh marine environments.

- STA-BIL Diesel, which is designed for generators, tractors and diesel trucks that use diesel fuel.

- STA-BIL 360°, which releases a corrosion fighting vapor inside the fuel system.

10.     Star-Brite markets and sells Star Tron® Enzyme Fuel Treatment, which it promotes as a "new generation fuel additive that uses enzyme technology to enhance the performance of all gas engines."

11.     Star-Brite directly competes with STA-BIL® by selling and marketing Star Tron® in interstate commerce to consumers in a variety of industries, including but not limited to the marine industry.  Gold Eagle and Star-Brite compete with each other for a common pool of customers.

12.     Star-Brite claims that Star Tron® is ideal for all engines, including: cars, trucks, boats (2-cycle & 4-cycle), motorcycles, ATCs, lawnmowers, generators, heavy equipment, snowmobiles, RVs, weed eaters, personal watercrafts and diesel engines.

## STAR-BRITE'S FALSE AND MISLEADING COMBUSTION AND PERFORMANCE CLAIMS

13.     As outlined in greater detail below, Star-Brite falsely claims in various advertising and marketing materials that Star Tron® improves the performance of E10 fuel through the use of enzymes by increasing fuel economy, reducing emissions, eliminating black soot and exhaust stains, removing carbon build-up, stabilizing gas and diesel fuels, and eliminating and preventing ethanol fuel problems.

14.     On its website page for Star Tron®, located at http://www.starbrite.com/en/startron, in catalogs, such as the one located at http://mystarbrite.com/public/catalogs/2014_StarTron_Catalog.pdf, and in promotional videos, such as the one located at http://www.starbrite.com/videos/star-brite-solutions-en?videoid=wxA9ZzihnSw#youtubegallery, Star-Brite falsely and misleadingly claims that Star Tron® has the following combustion and performance related benefits:

- "Star Tron® uses highly specialized enzymes to modify how gasoline and diesel fuel burns, the end result being more complete and uniform combustion. This same enzyme package cleans the fuel delivery system . . . and reduces engine emissions."
- Star Tron® "Reduces Emissions"
- Star Tron® "Increases [Fuel] Economy"
- Star Tron® "Restores Octane in Old or Sub Standard Fuel"
- "Start Ton® can improve octane in old, sub-standard or non-spec gasoline."
- "Star Tron® allows fuel to burn more completely, which results in maximum performance, fuel efficiency and reliable operation"

Each of these combustions and performance claims (the "Combustion and Performance Claims") is false and misleading. Examples of materials disseminated by Star-Brite containing these false and misleading statements are annexed hereto as Exhibit A.

15.     As explained on its website, http://www.astm.org, ASTM International, formerly known as the American Society for Testing and Materials (ASTM), is one of the largest voluntary standards developing organizations in the world. An ASTM standard is a document that has been developed and established within the consensus principles of the organization and which meets the requirements of ASTM procedures and regulations.

16.     The OEM industry recognizes the applicability of ASTM standards for testing the effects of fuel treatment additives on combustion and performance.

17.     The ASTM D240-09 test method "covers the determination of the heat of combustion of liquid hydrocarbon fuels ranging in volatility from that of light distillates to that of residual fuels."[3]   According to the Standard Test Method for D240-09 "[t]he heat of combustion is a measure of the energy available from a fuel. [K]nowledge of this value is essential when considering the thermal efficiency of equipment for producing either power or heat." ASTM D240-09 Standard, Section 5.1.

_____

[3]     ASTM International Designation: ASTM D240 - 09, Standard Test Method for Heat of Combustion of Liquid Hydrocarbon Fuels by Bomb Calorimeter ("ASTM D240 – 09 Standard").

18.     An increase in the heat of combustion resulting from the addition of a fuel treatment additive indicates that the fuel treatment additive has caused an increase in the fuel's power and efficiency.

19.     The results of an ASTM D240-09 heat and combustion test performed by an independent OEM industry and government recognized testing laboratory facility hired by Gold Eagle demonstrates that the addition of Star Tron does not have any significant impact on the heat of combustion of E10 fuel.

20.     The ASTM D2699 (RON) and ASTM D2700 (MON) tests are designed to "cover the quantitative determination of the knock rating of liquid spark-ignition engine fuel" in terms of Research of O.N.[4] and Motor octane number[5], respectively, including for fuels that contain up to 25% v/v (volume-volume percent) of ethanol.

21.     According to Standard Test Method for ASTM D2699, "Research O.N. correlates with commercial automotive spark-ignition engine antiknock performance under mild conditions of operation. . . . [and] is used by engine manufactures, petroleum refiners and marketers, and in commerce as a primary specification measurement related to the matching of fuels to engines." D2699 Standard, Sections 5.1-5.2.  In addition, "Research O.N. is used for measuring antiknock performance of spark-ignition engine fuels that contain oxygenates. . . . [and] is important in relation to the specifications for spark-ignition engine fuels used in stationary and other nonautomotive engine applications."  D2699 Standard, Sections 5.3-5.4.

---

[4]     ASTM International Designation: D2699-13b, Designation: 237/87, Standard Test Method for Research Octane Number of Spark-Ignition Engine Fuel, Section 1.1 ("D2699 Standard").

[5]     ASTM International Designation: D2700-13b, Designation: 236/87, Standard Test Method for Motor Octane Number of Spark-Ignition Engine Fuel, Section 1.1 ("D2700 Standard").

22.     Fuel treatment additives can contain antiknock agents that reduce engine knocking and increase a fuel's octane rating by raising the temperature and pressure at which the ignition of the fuel occurs.  Engine knocking can also cause damage to an engine.

23.     An octane rating of fuel measures the performance of fuel.  The higher the rating, the more compression the fuel can withstand before igniting.  Fuel with a higher octane rating is typically used in high performance petrol engines.  The use of low octane rated fuel can cause engine knocking.

24.     According to Standard Test Method for ASTM D2700, "Motor O.N. correlates with commercial automotive spark-ignition engine antiknock performance under severe conditions of operation. . . . [and] is used by engine manufactures, petroleum refiners and marketers, and in commerce as a primary specification measurement related to the matching of fuels and engines."  D2700 Standard, Sections 5.1-5.2.

25.     In addition, "Motor O.N. is used for measuring the antiknock performance of spark-ignition engine fuels that contain oxygenates. . . . [and] is important in relation to the specifications for spark-ignition engine fuels used in stationary and other nonautomotive engine applications."  D2700 Standard, Sections 5.3-5.4.

26.     ASTM D2699 (RON) and ASTM D2700 (MON) are generally accepted by members of the OEM industry as reliable standards to determine the octane level of gasoline, including E10.

27.     Results of the ASTM D2699 and ASTM D2700 tests performed by an independent OEM industry and government recognized testing laboratory facility hired by Gold Eagle reveal that Star Tron® has *absolutely no* positive effect on combustion or performance.

The results showed that the addition of Star Tron® to E10 fuel caused no increase in the octane rating of the baseline fuel.

28.     Given the tests results of the D240, D2699 and D2700 tests, Star-Brite's Combustion and Performance claims are false and misleading.

## STAR-BRITE'S FALSE AND MISLEADING CLEANING CLAIMS

29.     Star-Brite's claims relating to the cleaning benefits of Star Tron® (the "Cleaning Claims") are similarly false and misleading.  Star-Brite makes the following false and misleading Cleaning Claims through its marketing materials concerning its cleaning benefits:

- "Star Tron® uses highly specialized enzymes to modify how gasoline and diesel fuel burns, the end result being more complete and uniform combustion.  This same enzyme package cleans the fuel delivery system . . . and reduces engine emissions."
- Star Tron® "Reduces Emissions"
- Star Tron® "[C]lean[s] the entire fuel delivery system"
- Star Tron® "[P]revent[s] the formation of gums and other solids that clog carburetors and fuel injectors."
- Star Tron® "Keeps … the fuel system free of gum and varnish for up to two years." (Audio from video on Star-Brite's website)

Copies of materials containing these false and misleading Cleaning Claims are annexed hereto as Exhibit B.

30.     The ASTM D4629 test method "covers the determination of the trace total nitrogen naturally found in liquid hydrocarbons boiling in the range from approximately 50° to 400° C."[6]  According to the Standard Test Method for ASTM D4629, "[s]ome process catalysts used in petroleum and chemical refining may be poisoned when even trace amounts of nitrogenous materials are contained in the feedstocks."  In addition, "[t]his test method can be

---

[6]      ASTM International Designation: D4629 – 12, Standard Test Method for Trace Nitrogen in Liquid Petroleum Hydrocarbons by Syringe/Inlet Oxidative Combustion and Chemiluminescense Detection, Section 1.1 ("D4629 Standard").

used to determine bound nitrogen in process feeds and may also be used to control nitrogen compounds in finished products." Traces of nitrogen indicate the presence of cleaning components in a fuel treatment product.

31. As evidenced by results from the ASTM D4629 (nitrogen) test performed by an independent OEM industry and government recognized testing laboratory facility hired by Gold Eagle, there is no evidence of any increase in the presence of nitrogen when Star Tron® is added to E10 and analyzed under the ASTM4629 standard. Virtually 100% of refined gasoline contains nitrogen based detergents. Enzymes are known to be proteins that contain nitrogen. Without any increase in nitrogen, there is no evidence of the presence of any cleaning components from the use of Star Tron®, and thus no basis for Star-Brite to make its Cleaning Claims. The Cleaning Claims, therefore, are all false and misleading.

32. Moreover, Star-Brite's own materials show that its Cleaning Claims are false and misleading. For example, in a training video found on the Star-Brite website, located at http://www.starbrite.com/videos/star-brite-solutions-en?videoid=wxA9ZzihnSw#youtubegallery, there is a chart of a study conducted by Intertek that shows that Star-Brite is basing its Cleaning Claims on the ASTM D4625 standard, which is a standard for testing distillate fuel storage stability, which is diesel fuel, not E10 fuel. Moreover, the measurement from this test of insoluble materials in diesel fuels is not an indication of gum and varnish build-up from storage of E10 fuel. Nevertheless, Star-Brite refers to this test in a comparison advertisement against an unidentified competitor in the training video. A screenshot from this training video is annexed hereto as Exhibit C.

## STAR-BRITE'S FALSE AND MISLEADING
## RESTORATIVE CLAIMS

33.     Star-Brite's claims relating to the restorative benefits of Star Tron® (the "Restorative Claims") are similarly false and misleading.  Star-Brite makes the following false Restorative Claims through its marketing materials:

- Star Tron® "Rejuvenates old fuel."
- "Star Tron® can also restore stale fuel to serviceable condition."
- "The unique enzyme formula rejuvenates old substandard fuel"

Copies of materials containing these false and misleading Restorative Claims are annexed hereto as Exhibit D.

34.     Despite Star-Brite's claims, there is no evidence of any additives in the Star Tron® product that would produce the transformative results to E10 fuel claimed by the Restorative Claims.

35.     For example, the ASTM D5191 Reid Vapor Pressure ("D5191") test method "covers the use of automated vapor pressure instruments to determine the total vapor pressure exerted in vacuum by air-containing volatile, liquid petroleum products, including automotive spark-ignition fuels with or without oxygenates."[7] According to the Standard Test Method for D5191 "[v]apor pressure is a very important physical property of volatile liquids [and] [s]pecifications for volatile petroleum products generally include vapor pressure limits to ensure products of suitable volatility performance."  D5191 Standard, Sections 5.1 and 5.3.

36.     An increase in vapor pressure is an indication that a fuel treatment additive has increased the volatility and thus energy in the gasoline fuel, which is what rejuvenation of fuel is referring to (engine startability, fuel energy content and engine runability).

---

[7]     ASTM International Designation: D5191 – 13, Standard Test Method for Vapor Pressure of Petroleum Products (Mini Method) ("D5191 Standard").

37.     The D5191 test performed by an independent OEM industry and government recognized testing laboratory facility hired by Gold Eagle that added Star Tron® to the base E10 fuel caused no change in the vapor pressure.  Thus, this test demonstrates that Star Tron® has no restorative effect on fuel.

38.     Given these tests results, Star-Brite's Restorative Claims are false and misleading.

**STAR-BRITE'S FALSE AND MISLEADING
ETHANOL CLAIMS**

39.     Star-Brite's claims relating to the benefits of Star Tron® as it pertains to ethanol fuel problems (the "Ethanol Claims") are similarly false and misleading.  Star-Brite makes the following false and misleading representations through its website, in catalogs and/or product packing regarding ethanol fuel problems:

- "ETHANOL CAUSES LOST POWER, PERFORMANCE AND DECREASED FUEL ECONOMY
  Ethanol fuel does not produce as much energy as traditional fuel.  This results in inefficient combustion, decreased performance, reduced throttle response and poor fuel economy.  STAR TRON® SOLUTION: Star Tron's® enzyme formula helps to break apart large clusters of fuel molecules, creating more surface area.  This allows additional oxygen to react during combustion, which results in a more complete burn of the fuel, improved fuel economy, engine power, throttle response and reduced toxic emissions."
- Star Tron® "Cures & Prevents Ethanol Fuel Problems"

Copies of materials containing these false and misleading Ethanol Claims are annexed hereto as Exhibit E.

40.     Based on Star-Brite's Ethanol claims, adding Star Tron® to E10 fuel should increase its heat of combustion.  However, the ASTM D240-09 heat and combustion test performed by an independent OEM industry and government recognized testing laboratory facility hired by Gold Eagle demonstrates that the addition of Star Tron does not have any significant impact on the heat of combustion of E10 fuel.

41.     Given these tests results, Star-Brite's Ethanol Claims are false and misleading.

## COUNT I
### (False Advertising under Section 43(a) of the Lanham Act)

42.     Counterclaim Plaintiff, Gold Eagle realleges and reincorporates paragraphs 1 through 41 above of the Counterclaim as if full set forth herein, and further alleges as follows.

43.     As set forth in detail above, Star-Brite made false and misleading statements in its marketing materials, including but not limited to information and videos on its website, in catalogs and on its products (packaging and hangtags), examples of which are annexed hereto as Exhibits A to E, (collectively, the "Marketing Materials"), concerning Star Tron's effect on combustion and performance, its cleaning and restoration abilities and its claimed ability to cure and prevent ethanol fuel problems in all engines, including: cars, trucks, boats (2-cycle & 4-cycle), motorcycles, ATCs, lawnmowers, generators, heavy equipment, snowmobiles, RVs, weed eaters, personal watercrafts and diesel engines, including the Combustion and Performance Claims, Cleaning Claims, Restorative Claims and Ethanol Claims .

44.     Star-Brite made these false and misleading statements in connection with the marketing, sale and advertising of its product, Star Tron®.

45.     Through its Marketing Materials, Star-Brite has made false and misleading misrepresentations of material fact which deceived and/or are likely to deceive Gold Eagle's present and potential customers.

46.     Star-Brite's deception is material in that such false and misleading statements are likely to influence consumer's purchasing decisions, as they will be misled into the believing Star-Brite's Combustion and Performance Claims, Cleaning Claims, Restorative Claims and Ethanol Claims.

47.     Star-Brite directly competes with Gold Eagle by selling and marketing Star-Tron® in interstate commerce to consumers in any industry that utilizes cars, trucks, boats (2-cycle & 4-cycle), motorcycles, ATCs, lawnmowers, generators, heavy equipment, snowmobiles, RVs, weed eaters, personal watercrafts and diesel engines.

48.     Gold Eagle has suffered and will continue to suffer irreparable injury as a result of Star-Brite's past and future use of the false and misleading statements contained it its Marketing Materials, for which there is no adequate remedy at law.

49.     The injury to Gold Eagle outweighs whatever damage an injunction may cause to Star-Brite.

50.     If issued, an injunction would not be adverse to the public interest.

51.     Further, Gold Eagle has been damaged as a direct and proximate result of Star-Brite's actions.

WHEREFORE, Counterclaim Plaintiff respectfully requests that this Court enter a permanent injunction (a) enjoining Counterclaim Defendant from further using, displaying, and distributing any Marketing Materials that include the false and misleading Combustion and Performance Claims, Cleaning Claims, Restorative Claims and Ethanol Claims outlined above, or similarly false and misleading claims, and (b) requiring Counterclaim Defendant to issue corrective statements sufficient to dispel any residual harmful effects of these false and misleading statements made in the Marketing Materials; and Counterclaim Plaintiff also respectfully requests judgment against Counterclaim Defendant for actual damages, to be enhanced up to three times pursuant to 15 U.S.C. § 1117(a), a disgorgement of profits to Counterclaim Plaintiff that Counterclaim Defendant made as a result of its unlawful actions, attorney's fees, costs, interest, and any such other relief as this Court deems just and proper.

## <u>COUNT II</u>
### (Florida Deceptive and Unfair Trade Practices Act)

52.     Counterclaim Plaintiff, Gold Eagle realleges and reincorporates paragraphs 1 through 41 above as if full set forth herein, and further alleges as follows.

53.     This Count arises under Part II of Chapter 501 of the Florida Statues.

54.     Counterclaim Defendant has engaged in unfair methods of competition, unconscionable acts or practices in the conduct of its trade and in commerce.  Specifically, Counterclaim Defendant has violated Chapter 501 by, among other things violating Section 43(a) of the Lanham Act and Fla. Stat. Section 817.41 by making the false and misleading Combustion and Performance Claims, Cleaning Claims, Restorative Claims and Ethanol Claims.

55.     Star-Brite's actions were and continue to be immoral, unethical, and substantially injurious to Gold Eagle.

56.     As a direct and proximate result of Star-Brite's actions, Gold Eagle has suffered damages.

57.     Such injuries cannot be adequately compensated by money damages and will continue unless Counterclaim Defendant's acts are enjoined by the Court.  Accordingly, Counterclaim Plaintiff has no adequate remedy at all.

58.     The injury to Gold Eagle outweighs whatever damage an injunction may cause to Star-Brite.

59.     If issued, an injunction would not be adverse to the public interest.

WHEREFORE, Counterclaim Plaintiff respectfully requests that this Court enter a permanent injunction enjoining Counterclaim Defendant from (a) further using, displaying, and distributing any Marketing Materials that include the false and misleading Combustion and Performance Claims, Cleaning Claims, Restorative Claims and Ethanol Claims outlined above,

or similarly false and misleading claims, and (b) requiring Counterclaim Defendant to issue corrective statements sufficient to dispel any residual harmful effects of the false statements made in those Marketing Materials; and Counterclaim Plaintiff further requests judgment against Counterclaim Defendant for actual damages in an amount to be determined at trial, plus attorney's fees, costs, interest, punitive damages and other and any such other relief as this Court deems just and proper.

**COUNT III**
**(Florida Statutory False Advertising Under Florida Statute, Section 817.41)**

60.    Counterclaim Plaintiff, Gold Eagle realleges and reincorporates paragraphs 1 through 41 above as if full set forth herein, and further alleges as follows.

61.    Counterclaim Defendant, through its false and misleading statements in it Marketing Materials that include the false and misleading Combustion and Performance Claims, Cleaning Claims, Restorative Claims and Ethanol Claims outlined above,  has disseminated false and misleading advertising to the general public in the State of Florida.

62.    Counterclaim Defendant's false and misleading advertisements, including the Marketing Materials, were disseminated with the intent to induce consumers to buy Star Tron® instead of STA-BIL®.  These Marketing Materials contained misrepresentations of material fact concerning Star Tron®, particularly with respect to the claimed benefits of using Star Tron® products.

63.    Counterclaim Defendant knew or should have known of the falsity of its statements, particularly because, among other things, the statements are contradicted by its own commissioned research and by arguments Star-Brite advanced against Gold Eagle with respect to Gold Eagle's advertising.

64.     Consumers who have purchased Star Tron® have relied upon these false and misleading statements contained in the Marketing Materials.  Reliance on the advertising in the Marketing Materials was reasonable and justified under the circumstances, particularly because on information and belief, consumers would have no reason to believe that Star-Brite was providing false representations concerning its products in its Marketing Materials.

65.     Star-Brite and Gold Eagle are direct competitors and have customer-based overlap.

66.     As a direct and proximate result of the Counterclaim Defendant's unlawful acts, Counterclaim Plaintiff has been damaged.

WHEREFORE, Counterclaim Plaintiff demands a judgment against Counterclaim Defendant for actual damages under Florida Statute Section 817.41 in an amount to be determined at trial,  and punitive damages, plus attorney's fees, costs, interest, and other such relief as this Court deems just and proper.

<u>**COUNT IV**</u>
**(Unfair Competition)**

67.     Counterclaim Plaintiff Gold Eagle realleges and reincorporates paragraphs 1 through 41 above as if full set forth herein, and further alleges as follows.

68.     Counterclaim Defendant engaged in unfair competition with Gold Eagle by using, displaying, and distributing the Marketing Materials that include the false and misleading Combustion and Performance Claims, Cleaning Claims, Restorative Claims and Ethanol Claims set forth above.

69.     Counterclaim Defendant's conduct is likely to deceive and confuse current and potential consumers.

70.     Counterclaim Plaintiff and Counterclaim Defendant compete with each other for a common pool of customers.

71.     Counterclaim Defendant's conduct, in making false and misleading statements in its Marketing Material is willful and intentional.

72.     As a result of Counterclaim Defendant's conduct described herein, Counterclaim Plaintiff has sustained and will sustain irreparable injury to which no adequate remedy at law exists.

73.     The injury to Gold Eagle outweighs whatever damages an injunction may cause to Star-Brite.

WHEREFORE, Counterclaim Plaintiff respectfully requests that this Court enter a permanent injunction (a) enjoining Counterclaim Defendant from further using, displaying, and distributing any Marketing Materials that include the false and misleading Combustion and Performance Claims, Cleaning Claims, Restorative Claims and Ethanol Claims outlined above, or similarly false and misleading claims, and (b) requiring Counterclaim Defendant to issue corrective statements sufficient to dispel any residual harmful effects of the false statements made in those Marketing Materials; and Counterclaim Plaintiff also respectfully requests judgment against Counterclaim Defendant for actual damages in an amount to be determined at trial, plus attorney's fees, costs, interest, and other and any such other relief as this Court deems just and proper.


## DEMAND FOR A JURY TRIAL

Counterclaim Plaintiff and Defendant Gold Eagle, hereby demands a trial by jury on all issues so triable in the Counterclaim.

Dated:  New York, NY
           September 18, 2014

                                 By:    */s/ Marc J. Rachman*           
                                 Marc J. Rachman (pro hac vice)
                                 mrachman@dglaw.com
                                 DAVIS & GILBERT LLP
                                 1740 Broadway
                                 New York, NY  10019
                                 Tel:  (212) 468-4800
                                 Fax: (212) 468-4888

                                 Attorneys for Defendant/Counterclaim
                                 Plaintiff Gold Eagle Co.


                                 ARNSTEIN & LEHR LLP
                                 Franklin L. Zemel, Florida Bar No. 816620
                                 Franklin.zemel@arnstein.com
                                 200 East Las Olas Boulevard
                                 Suite 1700
                                 Fort Lauderdale, Florida 33301
                                 Tel:  (954) 713-7600
                                 Fax:  (954) 713-7710

                                 Attorneys for Defendant/Counterclaim
                                 Plaintiff  Gold Eagle Co.